UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| **MARK GOLDBERG and E & M MULTISERVICES, INC.,** | : |
| | : **UNITED STATES OF AMERICA'S** |
| Petitioners, | **MEMORANDUM OF LAW IN** |
| | : **OPPOSITION TO PETITION TO** |
| -against- | **RELEASE SEIZED PROPERTY** |
| | : **PURSUANT TO 18 U.S.C. § 983(f)** |
| **UNITED STATES OF AMERICA** | |
| | : 12 Misc. 269 (Part I) |
| Respondent. | |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

The United States of America (the "Government"), by and through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to the petition for the immediate release of seized funds filed by Mark Goldberg ("Goldberg") and his company, E&M Multi Services, Inc. ("E&M") (together, the "Petitioners").

**PRELIMINARY STATEMENT**

The Petitioners seek release of approximately $403,915.61 seized pursuant to a federal seizure warrant issued on July 12, 2012 by the Honorable Andrew J. Peck, United States Magistrate Judge for the Southern District of New York (the "Seized Funds").

As we demonstrate below, the petition should be denied because Goldberg and E&M have not met their burden of demonstrating that all of the requisite factors under Section 983(f) of Title 18 are satisfied in order for this Court to grant the relief they seek. First, Petitioner are not entitled to the return to the return of the seized funds because the statutory scheme allows for the return of money or financial instruments <u>only</u> where that money constitutes assets of a legitimate business

that the Government has also seized. Because the Government has not seized Goldberg's business, he is not entitled to the return of the money. Second, Petitioners have failed to make the requisite showing, required by Section 983(f)(1)(D), that the likely hardship from the Government's possession of the property outweighs the risk that the property will be lost or transferred. Indeed, it is undisputed that a substantial part of the property <u>will</u> be lost or transferred, as the Petitioners freely admit that they intend to use the money for legal fees and living expenses. Accordingly, Petitioners' request for the return of the seized funds should be denied.

## BACKGROUND

A.   **The New York State Proceedings**

The Government's seizure of the Seized Funds arises out of a criminal investigation conducted by the New York State Department of Taxation and Finance (the "Tax Department") and the Bronx District Attorney's Office, with the subsequent involvement of the Department of the Treasury, Internal Revenue Service, Criminal Investigation Division ("IRS-CI") and the United States Attorney's Office for the Southern District of New York (hereinafter, the "Investigation"), into the activities of E&M Multiservice, Inc. ("E&M"), a tax preparer business. E&M's flyers and other advertisements, and records obtained by the Tax Department, identify Mark Goldberg ("Goldberg") as the owner and operator of E&M.

In or about early April, 2012, both the Bronx District Attorney's Office and the Tax Department received numerous complaints of crowds of people lining up at E&M, located on the second floor of 650 Westchester Avenue, Bronx County, New York, in order to get "free money." The Investigation revealed that, since on or about January 1, 2012, E&M electronically filed in excess of 2,350 New York State personal income tax returns, of which approximately 1,993 reported no income. In fact, a substantial number of those "no income" returns were filed on behalf of

taxpayers who did have income during the relevant period.[1] In addition, of the more than 2,350 returns electronically filed by E&M, approximately 2,300 returns claimed a tax credit of at least $200 for school tuition.[2] An analysis of these returns has revealed that E&M filed numerous returns on behalf of individuals who claimed tuition tax credits but who apparently were not actually students and therefore were ineligible for such credits.

On or about April 17, 2012, the Honorable Ann Scherzer of the New York City Criminal Court, Bronx County, issued search warrants for E&M's offices at 650 Westchester Avenue, Second Floor, Bronx, New York, and Goldberg's residence, at 357 East 195th Street, 5H, Bronx, New York. On or about April 18, 2012, investigators from the Tax Department, New York City Police Officers, and the Bronx District Attorney's Office executed the search warrants and seized financial records

---

[1] The returns filed by E&M list E&M and "Goldberg" as the tax preparer. The returns also bear an electronic filing identification number ("EFIN") — a unique number assigned by the IRS — that is assigned to Goldberg's father. (Investigation has revealed that Goldberg caused his father to apply for the EFIN.) The IRS requires commercial tax preparers to obtain an EFIN so that they may file electronic Personal Income Tax returns with both the IRS and state tax agencies, including the Tax Department. New York State law requires that any person who prepares more than ten tax returns per year must register with the Tax Department. Even though Goldberg prepared in excess of 2,350 state returns in 2012, he failed to register with the Tax Department.

[2] Unlike a deduction, which allows a taxpayer to lower his or her taxable income by a certain dollar amount and thus avoid paying the applicable marginal tax rate on that deducted amount, a tax credit simply reduces, dollar-for-dollar, the amount a taxpayer owes. For example, a taxpayer with a marginal tax rate of 25% who receives a $100 deduction is deemed to have $100 less taxable income as a result of the deduction, and so has $25 less (100 x 25%) in tax liability as a result of the deduction. By contrast, a taxpayer who receives a $100 tax credit simply owes $100 less in taxes as a result of the tax credit, regardless of the taxpayer's marginal tax rate. Thus, even taxpayers with very low marginal tax rates can benefit substantially from tax credits. Moreover, for fully refundable tax credits -- such as the school tuition tax credit claimed on thousands of returns submitted by E&M, discussed above -- the taxpayer will receive the refund whether or not the taxpayer has any tax liability. For example, a taxpayer who has zero tax liability prior to the application of any tax credits, and who is eligible for a $200 fully refundable credit, will receive a payment of $200 from the government despite not having paid any taxes.

from E&M's offices and Goldberg's residence. The same day, Goldberg was arrested at his residence.

After being advised of his Miranda rights, Goldberg agreed to be interviewed by the investigators. During a videotaped interview, Goldberg admitted, among other things, that he was the owner and sole officer of E&M and that E&M was the holder of a Capital One checking account that contained over $400,000 in fees generated through his tax preparation business this year. Goldberg further stated that most of his customers would pay him a portion of the refund the customer received, usually between $175 and $250.

On or about April 18, 2012, Goldberg was charged in a New York State felony complaint with Grand Larceny in the Third Degree, Offering a False Instrument for Filing in the First Degree, and other charges relating to his filing false personal income tax returns. The felony complaint alleges that Goldberg falsely reported on personal income tax returns filed with the Tax Department in 2005, 2006, and 2007, that he was employed by the City of New York, and thereby collected nearly $50,000 in refunds. In fact, Goldberg had not been employed by the City since 2003 when he was terminated in relation to a conviction for perjury.

On or about April 25, 2012, the Honorable William L. McGuire, Justice of the Supreme Court for Bronx County, issued a search warrant authorizing a search of the Capital One account used by E&M. The search revealed that the account balance was approximately $403,915.61. Following the execution of the search warrant for the Capital One account, Capital One Bank issued a cashier's check dated April 27, 2012 payable to the Bronx District Attorney's Office in the amount of $403,915.61, representing the proceeds of Goldberg's offenses (the "Cashier's Check"). The Cashier's Check was not negotiated but was held as evidence by the Bronx District Attorney's Office.

**B.     The Federal Seizure Proceedings**

On or about July 11, 2012, the Bronx District Attorney's Office obtained a turnover order from the Bronx Supreme Court, which divested that court of jurisdiction over the Cashier's Check for the purpose of turning it over to the IRS for the initiation of federal forfeiture proceedings. On July 12, 2012, the Honorable Andrew J. Peck issued a seizure warrant for the Cashier's Check based on an application, sworn to by Special Agent Andrew Harrison of the IRS, establishing probable cause to believe the Seized Funds (i.e., the amount of the check) were property constituting or derived from proceeds traceable to the commission of a scheme to defraud through the use of interstate wires, in violation of 18 U.S.C. § 1343, and property traceable to that property, and thus was subject to seizure and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) & (b).

On or about August 8, 2012,[3] Goldberg and E&M filed the instant petition to release seized property pursuant to 18 U.S.C. § 983(f)(1) (the "Petition" or "Pet."). The Petition seeks the full release of the Seized Funds or, in the alternative, the release of $100,000 to Petitioners' counsel for legal fees and the release of $12,000 to Mark Goldberg to pay his living expenses for 10 months. Pet., ¶ 6. In an affidavit in support of the Petition, Goldberg represents that if the Seized Funds are released they will be placed in Petitioners' counsel's escrow account and used only for "the reasonable legal expenses of the Petitioners and reasonable living expenses of the Petitioner Mark Goldberg." Goldberg Aff., ¶ 2. Goldberg acknowledges that he is the president of E&M and that E&M Multi Services Inc operates a tax preparation services, preparing tax returns for clients. Goldberg maintains, however, that "[i]f income tax returns which were prepared by the company are incorrect or fraudulent they are based upon incorrect or fraudulent information that was provided

---

[3]     The Petition is dated August 2, 2012 but was filed on August 8, 2012. *See* Civil Docket, No. 12 Misc. 269 (S.D.N.Y. Aug. 8, 2012).

to the company employees without their knowledge of such inaccuracies or falsehoods." Goldberg Aff., ¶ 3.

In his affidavit, Goldberg states that he is legally blind, receives Social Security disability benefits, has been living in Section 8 subsidized housing, and has no other sources of funds or assets apart from an E-Trade Financial account with under $1000 on deposit and household furnishings, clothing, and personal effects. He claims to have $1,273 in unfunded monthly expenses. Goldberg Aff., ¶¶ 6-8. In an affirmation in support of the Petition, Petitioners' counsel claims that the Petitioners satisfy the criteria for release of funds under 18 U.S.C. § 983(f)(1), in that "the Petitioners have a possessory interest in the property, the Petitioner Mark Goldberg has sufficient ties to the community to provide assurances that the property will be available at the time of trial," Ripa Aff., ¶ 3-4, but fails to explain how the property (that is, the funds) will be available at the time of trial if he utilizes them for legal fees and living expenses.

## GOVERNING LEGAL FRAMEWORK

Congress enacted Section 983(f) as part of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, § 2, 114 Stat. 202, 208-09 (2000) ("CAFRA"), in order to provide a mechanism for the release of property during the pendency of a civil forfeiture proceeding in certain circumstances in which the government's continued possession of the property would pose a substantial hardship to a claimant. *United States v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 263-64 (4th Cir. 2004). Under 18 U.S.C. § 983(f)(1), an individual whose property has been seized is entitled to "immediate release" of the seized property where:

>   (A) the claimant has a possessory interest in the property;
>
>   (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of trial;

>(C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
>
>(D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
>
>(E) none of the conditions set forth in paragraph (8) applies.

Under § 983(f)(8):

>This subsection shall not apply if the seized property –
>
>(A) is contraband, currency or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;
>
>(B) is to be used as evidence of a violation of law;
>
>(C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or
>
>(D) is likely to be used to commit additional criminal acts if returned to the claimant.

18 U.S.C. § 983(f).

As reflected by the examples of "substantial hardship" explicitly articulated in subsection (1)(C), the nature of the difficulty encountered by a claimant must "go beyond mere inconvenience . . . ." *In re Petition of Moran*, No. 99-cv-248-MMA (CAB), 2009 WL 650281, at *3 (S.D. Cal. Mar. 10, 2009). Indeed, the statutory text makes clear that Congress intended this hardship provision to apply only in "the most urgent situations." *Kaloti Wholesale, Inc., v. United States*, 525 F. Supp. 2d 1067, 1070 (E.D. Wisc. 2007) (citing *Matter of Sinclair*, 870 F.2d 1340, 1343 (7th Cir.

1989)). Thus, while Section 983(f) offers a claimant a "detailed and comprehensive mechanism" for obtaining the release of property subject to civil forfeiture, it "strictly limits the situation in which such relief is available." *United States* v. *Contents of Accounts (Chavez)*, 629 F.3d 601, 607 (6th Cir. 2011).

One of the situations in which strict limitations are placed on "hardship" petitions under Section 983(f) is where, as here, a claim is made for the return of currency or monetary instruments of a business. In such a case, currency or monetary instruments may <u>not</u> be returned pursuant to section 983(f) unless the Government also seizes the attendant business. *United States* v. *Contents of Accounts (Chavez)*, 629 F.3d at 608 (currency may be released under § 983(f) only if the business to which the currency belongs constitutes a legitimate business that has been seized); *Kaloti Wholesale, Inc.* v. *United States*, 525 F. Supp. 2d at 1070 n. 2 (where Government did not seize the business itself but only a portion of its inventory, the exception to the prohibition regarding the release of seized currency did not apply); *In re: Seizure Warrants Issued*, 593 F. Supp.2d 892, 894 (N.D. W. Va. 2008) (following *Kaloti*; the exception in § 983(f)(8) applies only if the business has been seized; seizure of its funds does not constitute constructive seizure where the business continues to operate); *United States* v. *Contents of Account 4000393242*, 2010 WL 3398142 (S.D. Ohio Jan. 2, 2010) (under § 983(f)(8), claimant may not seek release of funds seized from a bank account unless he establishes that they were the funds of a business that has been seized; the reference is to the seizure of the business, not to the seizure of the funds).

In order to obtain the release of property under Section 983(f), a claimant bears the burden of demonstrating that the statutory prerequisites are satisfied. *Contents of Accounts (Chavez)*, 629 F.3d at 607; *Undetermined Amount of U.S. Currency*, 376 F.3d at 264 (citing Section 983(f)(6));

8

*United States v. Huntington National Bank*, No. 2:07-cv-0080, 2007 WL 2713832, at *1 (S.D. Ohio Sept. 14, 2007) (same).

## ARGUMENT

I. **THE PETITION MUST BE DENIED BECAUSE IT HAS NOT SATISFIED ITS BURDEN OF DEMONSTRATING THAT THE REQUISITE FACTORS UNDER SECTION 983(f) ARE MET**

As discussed in further detail below, the Petitioners simply have not satisfied their burden of demonstrating that the requisite factors of Section 983(f)(1) are satisfied. The petition for the immediate release of the Seized Funds should therefore be denied.

    A. **The Petitioners Have Failed To Demonstrate That None of the Provisions of Subsection (8) Applies, As Required By Section 983(f)(1)(E)**

As noted above, the plain terms of section 983(f)(8)(E) provide that a "hardship" return of seized property is permissible only if the petitioner demonstrates that "none of the conditions set forth in paragraph (8) applies." One of the conditions of paragraph (8) is that a return or currency, monetary instruments or electronic funds may not be ordered "unless the currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized." In other words, in the case of currency, the exemption for "businesses" applies <u>only</u> when the Government has seized the business itself, and not when it has merely seized currency belonging to the business. <u>See</u> S. Cassella, <u>Asset Forfeiture in the United States</u> § 13-9 (2012) ("exemption for 'businesses' applies only when the Government has seized the business itself").

    This conclusion, which has been arrived at by every court that has considered this issue, stems from a plain reading of section 983(f)(8)(E). Put simply, the term "has been seized" refers grammatically to "a legitimate business," not "assets." This is clear because the term "has been seized" is singular as is "a legitimate business," but the term "assets" is plural. *See United States* v.

9

*8 Gilcrease Lane*, 587 F. Supp.2d 133, 140 (D.D.C. 2008) ("the noun that 'which has been seized' modifies is 'business' not 'assets'; even if seizure of 100 percent of its capital were considered the constructive seizure of the business, claimant did not show that the business – which was a Ponzi scheme – was "legitimate").

In this case, the government seized funds on deposit in an account held by E&M and Goldberg at Capital One Bank; it has not, however, seized any business owned or operated by Goldberg, including E&M.  Thus, a condition under subsection 983(f)(8) does exist – the seized property is currency, or other monetary instrument, or electronic funds – and the seized property does not constitute assets of a business that has been seized.  Accordingly, the Petitioners are not entitled to the return of the funds.  *See United States* v. *Contents of Accounts (Chavez)*, 629 F.3d at 608;  *Kaloti Wholesale, Inc.* v. *United States*, 525 F. Supp. 2d 1067, 1070 n. 2  (E.D. Wis. 2007) (where Government did not seize the business itself but only a portion of its inventory, the exception to the prohibition regarding the release of seized currency did not apply); *United States* v. *8 Gilcrease Lane*, 587 F. Supp.2d at 140; *In re: Seizure Warrants Issued*, 593 F. Supp.2d 892, 894 (N.D. W. Va. 2008) (following *Kaloti*; the exception in § 983(f)(8) applies only if the business has been seized; seizure of its funds does not constitute constructive seizure where the business continues to operate); *United States* v. *Contents of Account 4000393242*, 2010 WL 3398142 (S.D. Ohio Jan. 2, 2010) (under § 983(f)(8), claimant may not seek release of funds seized from a bank account unless he establishes that they were the funds of a business that has been seized; the reference is to the seizure of the business, not to the seizure of the funds).

B.  **The Petitioners Have Failed To Demonstrate That Any Hardship Outweighs The Risk That The Property Will be Dissipated, As Required By Section 983(f)(1)(D)**

It is plain from Petitioners papers that they cannot demonstrate, as required by 18 U.S.C. § 983(f)(1)(D), that the Government's continued possession of the property will result in hardship that outweighs the risk that the property will be "destroyed, damaged, lost, concealed, or transferred if it is returned." The Petitioners are seeking release of the Seized Funds not to preserve those funds but, instead, to pay attorney's fees and living expenses. Thus, the Petitioners clearly have no intent of preserving the funds for potential forfeiture by the Government. *See United States v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 265 (4th Cir. 2004) (noting that § 983(f) "places great emphasis on ensuring the preservation of any released property pending final disposition of forfeiture proceedings"). In fact, there is an absolute certainty, rather than a mere "risk," that the property will be "transferred" or lost if it is returned to the Petitioners --- as the Petitioners freely acknowledge. Thus, the hardship faced by the Petitioners clearly does not outweigh the risk that the property will be unavailable to the Government for forfeiture and, therefore, the Petitioners' petition should be denied. *See id.* (finding that the "risk" of "loss" appears to be almost certain when the claimants conceded that they sought the use of the released bank account funds to pay their attorneys' fees); *United States v. 8 Gilcrease Lane,* 587 F. Supp.2d at 147; (following *Undetermined Amount*; certainty that money will be dissipated if released bars its release under § 983(f)(1)(D)); *Kaloti Wholesale, Inc. v. United States*, 525 F. Supp. 2d at 1070 (claimant's admission that it would sell its seized merchandise if it were released pending trial meant made release under section 983(f) impossible); *United States v. One 2003 Mercedes Benz 8500 AMG,* 2008 WL2966263 (E.D. Mich. July 24, 2008) (denying release of the proceeds of an interlocutory sale to claimant who says she needs the money to pay bills; § 983(f)(8) specifically bars the release

11

of currency because of the likelihood that it will not remain available for trial)*; United States v. Huntington National Bank Account*, 2007 WL 2713832 (S.D. Ohio 2007) (same); *United States v. $1,231,349.68 in Funds*, 227 F. Supp. 2d 125, 129 (D.D.C. 2002) (denying release of seized cash because the likelihood that it would be unavailable for trial "is almost assured"; finding that "risk" factor weighed strongly in the government's favor for bank account because of the ease at which cash can be transferred and petitioner's expressed desire to spend the funds); *see also United States v. Approximately 81,454 Cans of Baby Formula*, 525 F. Supp.2d 1067, 1070 (E.D. Wis. 2007) (finding requirement of 18 U.S.C. § 983(f)(1)(D) not met where petitioners acknowledged that they intended to sell the property if it were returned to them).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Petition in its entirety without prejudice to renewal of the *Monsanto* motion at the appropriate time — following the return of any Indictment against Goldberg.

Dated: New York, New York
       August 31, 2012

                      Respectfully submitted,

                      PREET BHARARA
                      United States Attorney

            By:    s/Stanley J. Okula, Jr.
                  STANLEY J. OKULA, JR.,
                  PAUL MONTELEONI,
                  BARBARA WARD
                  Assistant United States Attorney
                  (212) 637-1585

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on the above date.

      By:    s/Stanley J. Okula, Jr.
             STANLEY J. OKULA, JR.
             Assistant United States Attorney
             (212) 637-1585
             stan.okula@usdoj.gov
             enacted as .